UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWN CASTLE NG WEST LLC, | Case No.18-cv-02473-JSC |
| Plaintiff, | |
| v. | **ORDER RE: MOTION TO DISMISS** |
| TOWN OF HILLSBOROUGH, et al., | Re: Dkt. No. 11 |
| Defendants. | |

Plaintiff Crown Castle NG West LLC brings this action challenging the denial of Crown Castle's application to build 16 small cell antenna "nodes" with supporting electrical equipment and fiber optics lines within the public rights-of-way in Hillsborough. Defendants the Town of Hillsborough and the Hillsborough City Council move to dismiss the complaint for lack of standing, failure to join a necessary party, and for failure to state a claim.[1] (Dtk. No. 11.) Having considered the parties' briefs and having had the benefit of oral argument on August 2, 2018, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. Plaintiff has standing to bring the claims here and did not fail to join a necessary party. Plaintiff has also adequately pled its claims under the Telecom Act and California Public Utilities Code, but has failed to adequately plead a procedural due process claim under section 1983.

## BACKGROUND

**A. Complaint Allegations**

Plaintiff Crown Castle is a state regulated telephone corporation and a public utility as defined by California Public Utilities Code, section 7901. (Complaint at ¶ 6.) The California

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 10 & 18.)

Public Utilities Code also "vest[s] Crown Castle with a statewide franchise to 'erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines'" within the public rights-of-way "without having to obtain a municipal franchise or discretionary fiat." (*Id*. (quoting Cal. Pub. Util. Code § 7901).) The California Public Utilities Commission (PUC) has conferred Plaintiff with a "certificate of public convenience and necessity" that "certifies Crown Castle as a 'competitive local exchange carrier'" and as "a public utility under the constitutionally granted regulatory authority of the PUC." (Complaint at ¶ 6.)

On January 4, 2017, Plaintiff submitted an application to the Town of Hillsborough seeking approval of a project to construct "16 small cell antenna 'nodes' with supporting electrical equipment and fiber optic lines" within the public right-of-ways of the town (hereafter "the Project"). (*Id*. at ¶¶ 22, 24.) The Project was intended to "fill critical service gaps in the Town." (*Id*. at ¶ 22.) Plaintiff "worked closely with the Town and City Manager to select the sites for the Project nodes, focusing on sites recommended by Town staff." (*Id*. at ¶ 26.) These "collaborative efforts" resulted in the City Manager's "recommendation of approval of all 16 nodes of the Project." (*Id*. at ¶ 27.)

On October 31, 2017, the City Manager published "Public Notice of Proposed Action by the City Manager Approving the Installation of a Ground-Mounted Wireless Communications Facility for each of the 16 nodes (collectively "the Approval Notices). (*Id*.) The Approval Notices indicated that the Project was consistent with Hillsborough's general plan and codes, and provided notice to residents that the Project permits would be approved. (*Id*.)

To address community opposition to the Project, Hillsborough called a Town Meeting for December 7, 2017. (*Id*. at ¶¶ 29, 31.) The meeting lasted several hours and included "comments from a cadre of Project opponents who appeared dead set on stopping the Project at any cost" as well as "threats of political and legal action if the Town approved the Project." (*Id*. at ¶ 31.)

On December 20, 2017, the City Manager issued a "City Manager's Decision" denying permits for all 16 sites. (*Id*. at ¶ 32.) The City Manager posted two letters which "purport[ed] to support the conclusions of the denial with 'evidence.'" (*Id*.) The first letter stated that the denial was based on the fact that the Project had not undergone review pursuant to the California

Environmental Quality Act. (*Id*. at ¶ 33.) The second letter "consisted of approximately ten pages of conclusory assertions" which "reversed [the City Manager's] prior conclusions on nearly every evidentiary finding in its Proposed Approval Notice." (*Id*. at ¶ 34.)

Two weeks later, Plaintiff filed an appeal of the City Manager's denial with the City Council pursuit to Hillsborough Municipal Code § 15.32.090. (*Id*. at ¶ 36.) Hillsborough scheduled a hearing on the Appeal for March 12, 2018. (*Id*. at ¶ 37.) Prior to the hearing, the City Council convened two closed session meetings to "discuss 'one potential case' that represented '[s]ignificant exposure to litigation.'" (*Id*.) At the March 12 hearing, many of the same people appeared to oppose the Project as had attended the initial Town Meeting. (*Id*. at ¶ 39.) Plaintiff had only 15 minutes to present its case and 10 minutes for rebuttal. (*Id*.) The public hearing was then closed so that the City Council could deliberate. (*Id*. at ¶ 40.)

On March 26, 2018, Hillsborough's outside counsel presented a denial resolution to the City Council for a vote. (*Id*. at ¶ 41.) "Because the City Council had closed the public hearing on March 12, 2018, Crown Castle was precluded from making any response, rebuttal or comment to the Denial Resolution for inclusion [in] the administrative record." (*Id*.) The City Council unanimously adopted the denial resolution. (*Id*.) The denial resolution was a blanket denial of all 16 applications. (*Id*. at ¶ 42.)

**B. Procedural Background**

A month after Plaintiff's appeal was denied, it filed this civil action seeking declaratory and injunctive relief and/or a writ of mandate directing Defendants, the Town of Hillsborough and the Hillsborough City Council, to set aside the denial resolution and approve its applications for the 16 nodes. Plaintiff pleads five claims for relief: (1) violation of the Telecom Act, 47 U.S.C. § 332(c)(7)(b)(i)(ii); (2) violation of the Telecom Act, 47 U.S.C. § 332(c)(iii); (3) violation of the Telecom Act, 47 U.S.C. § 253; (4) violation of California Public Utilities Code §§ 7901 & 7901.1; and (5) violation of 42 U.S.C. § 1983. (Dkt. No. 1.) Plaintiff seeks expedited review under 47 U.S.C. 332(c)(7)(B)(v) which provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in

3

any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis."

Defendants responded by filing the underlying motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) for lack of standing, lack of subject matter jurisdiction, and failure to join a necessary party, respectively. The motion is fully briefed and came before the Court for hearing on August 2, 2018.

**DISCUSSION**

Defendants' motion to dismiss is three-fold. First, Defendants insist that Plaintiff lacks standing to bring a claim under 47 U.S.C. § 332(c)(7) because Plaintiff is not a personal wireless service provider. Second, Defendants contend that Plaintiff's first, third, fourth, and fifth claims for relief fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).Finally, Defendants maintain that dismissal is required under Federal Rule of Civil Procedure 12(b)(7) because Plaintiff has failed to join a necessary and indispensable party— the actual wireless service provider, Verizon Wireless.

**A. Plaintiff has Standing to Bring its First Claim for Relief**

The Telecom Act provides that local government regulations of "the placement, construction, and modification of personal wireless service facilities" "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(ii). Defendants contend that Plaintiff does not have standing to bring a claim under this provision because it does not allege and cannot allege that it is a personal wireless service provider. Defendants are incorrect.

"A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution [and] standing is a 'core component' of that requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To satisfy Article III's case or controversy requirement, [a plaintiff] needs to show that he has suffered an injury in fact, that the injury is traceable to the challenged action of [the defendant], and that the injury can be redressed by a favorable decision." *Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). In ruling on a motion to dismiss for want of standing, the

court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009).

Plaintiff's complaint sufficiently alleges that it has suffered an injury in fact caused by Defendants; namely, the denial of its application to build 16 small cell antenna nodes. Defendants caused the injury by denying the application, and the injury can be redressed by a favorable decision. Thus, Article III of the United States Constitution is satisfied. *See Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct 1377, 1386 (2014). At oral argument, Defendants insisted that the *Cellco* case supported its argument that Plaintiff lacks standing to make an effective prohibition challenge under Section 332(c)(7)(B)(ii). *See Cellco P'ship v. Bd. of Sup'rs of Fairfax Cty., Va.*, 140 F. Supp. 3d 548, 562 (E.D. Va. 2015). However, there, the district court held that Verizon did not have standing to bring a claim because it did not apply to build the wireless communications facility, but that CWS—a wireless network infrastructure developer—whose application to build such a facility in partnership with Verizon was denied, *did* have standing because it "invested time and resources into pursuing the Applications," the board's denial of the application caused it "to suffer concrete injury that is fairly traceable to the denial," and "a reversal of the denial would consequently redress the harm." *Id*. at 554, 562. The same is true here.

Defendants' argument is not really about standing; instead, it is an argument that Plaintiff does not have a right to bring an action under the Telecom Act because it does not itself provide wireless services. This argument is one of statutory interpretation, not standing—prudential or otherwise. *See Lexmark*, 572 U.S. at 1387-88. Under the plain language of the Telecom Act Plaintiff may bring a claim challenging the denial of its application. Section 332(c)(7)(B)(ii) allows "[a]ny *person* adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof...[to] commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v) (emphasis added). The Telecom Act defines "person" broadly to include an "individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). Defendants do not dispute that Plaintiff's status as a limited liability company qualifies it as a person under the Act. Further, Plaintiff alleges that it has been

5

adversely affected by Defendants' final action denying its application. Thus, Plaintiff plausibly alleges that it is a "person" that may bring a claim under the Act. *See, e.g., Liberty Towers, LLC v. Zoning Hearing Bd. of Twp. Lower Makefield, Bucks Cty., Pa*., 748 F. Supp. 2d 437 (E.D. Pa. 2010) (collecting cases and noting that "Defendants' interpretation of the TCA is inconsistent with both the language of the Act and sound precedent in many circuit courts where non-telecommunication companies have pursued claims under the Act." *Id*. (collecting cases); *Horvath Towers III, LLC v. Zoning Hearing Bd. of Butler Twp*., 247 F. Supp. 3d 520, 523 (M.D. Pa. 2017) (holding that an entity which builds radio towers and then sublets the use of those towers to personal wireless communications may sue based on the denial of a permit); *Varsity Wireless, LLC v. Boxford Zoning Bd. of Appeals*, No. CV 15-11833-MLW, 2017 WL 4220575, at *3 (D. Mass. Sept. 22, 2017) (concluding that plaintiff, who was not a telecommunications provider could bring a claim under section 332(c)(7)(B)).

Defendants' insistence that Plaintiff cannot bring this claim because it was another entity—namely Verizon—that was allegedly prohibited from providing personal wireless services ignores the plain language of the statute. There is no hint in the statute's language that the "person adversely affected" by the local government's final action also be a person who has been prohibited from providing personal wireless services. That is no doubt why the case law uniformly holds the opposite and why Defendants were unable to cite a single case to support their interpretation of the statute.[2]

Accordingly, Defendants' motion to dismiss the first claim for relief for lack of standing is denied.

---

[2] At oral argument, Defendants seized on language from the Ninth Circuit's decision in *MetroPCS* stating that the personal wireless provider had to be seeking to remedy its own gap in service. *See MetroPCS, Inc. v. City & Cty. of San Francisco*, 400 F.3d 715, 732 (9th Cir. 2005), abrogated on other grounds by *T-Mobile S., LLC v. City of Roswell, Ga*., 135 S. Ct. 808 (2015). This language, however, did not arise in reference to who had standing to bring a claim under section 332(c)(7)(B), or who could bring a claim under this section, but rather, in the context of defining a significant gap in coverage under the statute. The court adopted the First Circuit's rule and held that "a significant gap in service (and thus an effective prohibition of service) exists whenever a provider is prevented from filling a significant gap *in its own* service coverage." *Id*. at 733 (emphasis in original). There is no support in *MetroPCS* or otherwise that an entity such as Plaintiff which sought to build the infrastructure to remedy a particular wireless service provider's gap in service could not state a claim for relief under section 332(c)(7)(B).

**B. Plaintiff's Claims for Relief**

Defendants move to dismiss four of Plaintiff's five claims for relief based on failure to state a claim upon which relief can be granted. The Court addresses each in turn.

**1) Telecom Act, Section 332(c)(7)(B)(i)(ii) (First Claim for Relief)**

As explained above, Plaintiff contends that Defendants' denial of their application prohibits or has the effect of prohibiting "the provision of personal wireless services" in violation of Section 332(c)(7)(B)(i)(ii). On a Section 332(c)(7)(B)(i)(ii) claim, the plaintiff has the burden of showing that the state or local government will effectively prevent a wireless provider from closing a "significant gap" in service coverage. *See T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 997 (9th Cir. 2009). Such a claim generally involves a two-pronged analysis "requiring (1) the showing of a significant gap in service coverage and (2) some inquiry into the feasibility of alternative facilities or site locations." *Id* at 995. (internal citation and quotation marks omitted).

Plaintiff has adequately alleged significant gaps in coverage. (Complaint at ¶ 25 "Crown Castle repeatedly demonstrated with expert data and analysis that significant gaps in service exist throughout the Town and specifically in the area to be served by the Project. The data establish levels of service that are either non-existent or well below any industry standard for 21st century telecommunications and broadband service."). *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715 (2005), *abrogated on other grounds by*, *T-Mobile South, LLC v. City of Roswell,* Georgia, 135 S.Ct. 808 (2015), does not hold that the plaintiff must show a gap in coverage of its own service.

Plaintiff has also plausibly alleged satisfaction of the second prong: an inquiry into the feasibility of alternative sites. Plaintiff alleges that "[e]ach node site within the Project was selected by Crown Castle with the input and assistance of Town staff after careful analysis, site-walks with Town staff, design development and collaboration with the City Manager and the Town's hired experts." (*Id*. at ¶ 23.) Further, "[t]he sites were chosen after extensive input from the Town staff as the least intrusive location to achieve radio frequency [] coverage objections required for the location." (*Id*.) Finally, Plaintiff alleges that the City Manager's Approval Notice identified the Project as "the least intrusive means of closing [the] significant gap" and that the

7

proposed alternative design was more consistent with the general plan and minimized the impact of the Project than Plaintiff's original proposal. (*Id*. at ¶¶ 28.2; 28.9.) These allegations are sufficient.

*American Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1056 (9th Cir. 2014), does not persuade the Court otherwise. There, the Ninth Circuit affirmed the district court's grant of summary judgment on a section 332(c)(7)(B)(i)(ii) claim because "[t]o *prevail* on this claim [] ATC must show that its facilities were the "least intrusive means" in light of the aesthetic values that motivated the City's decision to deny the CUP applications" and the plaintiff had failed to do so. *Id*. at 1056 (emphasis added). The case says nothing about what must be pled to proceed to the summary judgment phase.

Defendants also contend that the claim must be dismissed because Plaintiff has not sufficiently alleged that the denial of its application was part of a broader policy of denying all such applications to build wireless service facilities. The problem with this argument is that there is nothing in the statute's language or the Ninth Circuit case law that suggests a plaintiff must plead such facts to state a Section 332(c)(7)(B)(i)(ii) claim. The sole case upon which Defendants rely as support for such a requirement—*APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler Cty. of Pennsylvania*, 196 F.3d 469, 479 (3d Cir. 1999)—is from the Third Circuit, and that was, in any event, a summary judgment decision not a pleading decision.

**2) Telecom Act, Section 253 (Second Claim for Relief)**

Section 253 provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). Defendants argue that Plaintiff's Section 253 claim fails because (1) Plaintiff's section 332 claim is mutually exclusive of a section 253 claim, and (2) Plaintiff has not adequately pled a claim for relief under section 253. Neither argument is availing.

First, Defendants insist that Plaintiff cannot plead a claim under section 332 and section 253 of the Telecom Act. As support for this argument they rely on the following language in section 332(c)(7)(A):

> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

Defendants contend that section 332(c)(7) prohibits a party from challenging under section 253(a) a zoning decision which would be covered by section 332(c)(7). Defendants, however, cite no authority for this proposition.[3] Nor can they. On at least two occasions the Ninth Circuit has considered appeals involving claims under both section 253(a) and section 332(c)(7). *See Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 728 (9th Cir. 2009) (holding that to the extent that Sprint sought to raise an "as applied challenge under § 253 …that Sprint has not demonstrated a prohibition on the provision of wireless service as a matter of law" just as with its section 332(c)(7) claim.); *Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 578 (9th Cir. 2008) (en banc) (holding that "a plaintiff suing a municipality under section 253(a) must show actual or effective prohibition, rather than the mere possibility of prohibition" (citation omitted)). The Ninth Circuit did not suggest in either case that the claims were mutually exclusive; rather, in *Sprint Telephony* the court held that the standard under section 253 and 332 was the same: "Under both, a plaintiff must establish either an outright prohibition or an effective prohibition on the provision of telecommunications services; a plaintiff's showing that a locality could potentially prohibit the provision of telecommunications services is insufficient." 543 F.3d at 579. In both cases, the Ninth Circuit concluded that the plaintiffs had failed to show either an effective or outright prohibition on providing wireless telecommunications and the court thus declined to decide whether the suit fell under section 253 or section 332. *See Sprint PCS*, 583 F.3d at 728 ; *Sprint Telephony*, 543 F.3d at 579. At most, this conclusion suggests that claims under section 253 and section 332 may be pled in the alternative; it does not suggest that the claims are mutually exclusive.

Defendants' second argument—that Plaintiff has failed to adequately allege a claim under section 253—likewise fails. Plaintiff plausibly alleges that Hillsborough's ordinances,

---

[3] Defendants concede that there is "limited authority" without pointing to any actual authority. (Dkt. No. 24 at 15:7.)

9

regulations, and procedures "confer more authority on the Town staff and decision-makers than is allowed by federal and state law" and "impose an unreasonably high bar to obtain approvals" which has "the effect of prohibiting the provision of telecommunications service in violation of section 253(a)." (Complaint at ¶ 59.) In light of all of the Complaint's allegations, Plaintiff has plausibly alleged a violation of section 253's prohibition on state or local regulations or requirements that "have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." *See* 47 U.S.C. § 253(a).

Accordingly, Defendants' motion to dismiss Plaintiff's section 253 claim is denied.

**3) California Public Utilities Code Sections 7901 and 7901.1 Claim**

Defendants also move to dismiss Plaintiff's claim under Public Utilities Code Sections 7901 and 7901.1. Section 7901 provides that

> Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters.

Cal. Pub. Util. Code § 7901. Section 7901.1 provides that "municipalities shall have the right to exercise reasonable control as to the time, place, and manner in which roads, highways, and waterways are accessed," but that such "control, to be reasonable, shall, at a minimum, be applied to all entities in an equivalent manner." Cal. Pub. Util. Code § 7901.1(a)-(b).

Plaintiff alleges that because the PUC has certified it as a competitive local exchange carrier it has a vested right to use the public right of ways in Hillsborough to construct telephone lines and erect fixtures necessary to these lines. (Complaint at ¶ 63.) Plaintiff further alleges that the discretionary permitting process—which it likens to a conditional use permit—violates Plaintiff's vested rights under section 7901 and exceeds Defendants' authority to enact time, place, and manner controls. (*Id.* at ¶¶ 64-66.)

Defendants first attack this claim by arguing that section 7901 only covers landlines and not the radio lines that are at issue here. However, recognizing that the case law is to the contrary,

10

*see, e.g.*, *City of Huntington Beach v. Pub. Utilities Com.*, 214 Cal. App. 4th 566, 587 (2013) (holding that "[t]he definition of 'telephone corporations' for purposes of section 7901 is not limited to those entities utilizing technology invented at the time section 7901 or its prior iterations in the Civil Code were enacted. If an entity owns, controls, operates, or manages telephone lines in connection with telephone communication, the entity is a 'telephone corporation' under section 7901."); *GTE Mobilnet of Cal. Ltd. P'ship v. City & Cty. of San Francisco*, 440 F. Supp. 2d 1097, 1103 (N.D. Cal. 2006) (holding that "wireless carriers are included in the definition of 'telephone corporation' in § 7901, and that the definition of 'telephone line' in § 7901 is broad enough to reach wireless equipment"), Defendants try a different tack. They say even assuming that section 7901 applies to "radio lines," it applies only to entities that own the lines and fixtures and that since Plaintiff was applying to construct the lines for Verizon it cannot state a claim. This argument, too, fails.

First, the Complaint does not allege that Plaintiff does not own the facilities it applied to construct, as Defendants assume. Second, and most importantly, Defendants again cite no authority for their strained reading of a statute. Section 7901 governs *construction* of the telephone lines and fixtures, it does not require ownership. *See* Cal. Pub. Util. Code § 7901 ("Telegraph or telephone corporations may construct lines of telegraph or telephone lines … and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures"). Plaintiff adequately alleges that it was denied the opportunity to construct such lines and fixtures. (Complaint at ¶¶ 22, 24-27, 66.)

Defendants' motion to dismiss Plaintiff's Public Utilities Code sections 7901 and 7901.1 claim is denied.

**4) Section 1983 Procedural Due Process Claim**

Defendants also move to dismiss Plaintiff's procedural due process claim under 42 U.S.C. § 1983. To have a property interest protected by the Due Process Clause, [Plaintiff] must demonstrate that it has a "legitimate claim of entitlement" that is "defined by existing rules or understandings that stem from an independent source such as state law." *Pac. Bell Tel. Co. v. City of Walnut Creek*, 428 F. Supp. 2d 1037, 1050 (N.D. Cal. 2006). Plaintiff's complaint does not

11

specify the basis for its procedural due process claim and instead refers to Defendants' "blanket prohibition against Crown Castle's Project before an unbiased and objective hearing on the merits" which denied Plaintiff of "its right to due process and equal protection." (Complaint at ¶ 70.) In its opposition brief, Plaintiff clarifies that the procedural due process claim is predicated on denial of its rights under Public Utilities Code section 7901. Plaintiff insists that it has a "constitutionally protected vested statewide franchise right" under section 7901. (Dkt. No. 21 at 21:5-6.) In particular, Plaintiff contends that section 7901 entitles it to entry into Hillsborough's public right of ways subject only to reasonable time, place, and manner restrictions, and that Defendants' "fully discretionary conditional use permit process" and "blanket denial" violated Plaintiff's rights. (Dkt. No. 21 at 22:2-8.)

Although these new allegations attempt to tie Plaintiff's constitutional due process claim to its rights under section 7901, they are not in the Complaint. Accordingly, Plaintiff has failed to adequately plead a section 1983 claim. Defendants' motion to dismiss Plaintiff's section 1983 claim is granted with leave to amend.

## C. Verizon is not a Necessary and Indispensable Party

In the alternative Defendants move to dismiss on the grounds that Verizon is a necessary and indispensable party because an "effective prohibition" claim can only lie if an entity is prohibited from providing wireless services and Verizon is the only wireless services provider who could state such a claim. According to Defendants, if "this matter proceeds to adjudication, the outcome will very likely impact Verizon Wireless's rights and operations within the Town." (Dkt. No. 11 at 25:17-19.)

Pursuant to Federal Rule of Civil Procedure 12(b)(7), a party may move to dismiss a case for "failure to join a party under Rule 19." Rule 19 imposes a three-step inquiry: (1) whether the absent party is necessary (i.e., required to be joined if feasible) under Rule 19(a); (2) if so, whether it is feasible to order that absent party to be joined; and (3) if joinder is not feasible, whether the case can proceed without the absent party, or whether the absent party is indispensable such that the action must be dismissed. *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir.2012). The burden is on the moving party to produce evidence in

support of the motion. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990).

Here, Defendants have failed to meet their burden. As the Court concluded above, Plaintiff—as the permit applicant—has its own claim under the statute as an adversely affected party. The statue does not limit actions to only wireless service providers. Defendants' argument that Verizon could submit its own application and that Defendants would then be forced to address the same issues Plaintiff raises here in a separate proceeding is equally unavailing. Rule 19(a)(2)(ii) provides that joinder is necessary if "the person's absence ... leave[s]an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Defendants' hypothetical fails to demonstrate any such substantial risk. Nor does the fact that much of the information at issue in this case may be in Verizon's control render them a necessary party. *See Christopher v. The Neiman Marcus Grp., LLC*, No. 16-06309, 2017 WL 374903, at *3 (C.D. Cal. Jan. 26, 2017) ("An individual is not a proper party to an action—let alone a 'necessary' party—just because he or she possesses discoverable information."). The federal rules provide ample means for obtaining discovery from non-parties.

The Court thus denies Defendants' motion to dismiss for failure to join a necessary and indispensable party.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is DENIED as to all claims except the due process claim. The due process claim is DISMISSED with leave to amend. Plaintiff shall file an amended complaint, or statement that it elects to stand on the present Complaint, within 21 days.

This Order disposes of Docket No. 11.

**IT IS SO ORDERED.**

Dated: August 9, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

13